[Cite as *State v. Perry*, 2025-Ohio-2566.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 23CA20 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| JAMES PERRY, | : | |
| Defendant-Appellant. | : | **RELEASED 7/16/2025** |

_____

APPEARANCES:

Kathleen Evans, Assistant Public Defender, Office of the Ohio Public Defender, Columbus, Ohio, for appellant.

Randy Dupree, Jackson County Prosecutor, Colleen S. Williams, Jackson County Assistant Prosecutor, Jackson, Ohio, for appellee.
_____

Hess, J.

{¶1}   James Perry appeals his conviction following a jury trial of multiple counts of aggravated trafficking in drugs. The jury also found that his vehicle was subject to forfeiture. Perry raises two assignments of error. First, Perry contends that the trial court erred when it determined that a claim of outrageous government conduct is part of the entrapment defense and cannot be separately maintained. Next, he challenges the forfeiture order because the trial court failed to conduct a proportionality review required by the forfeiture statute.

{¶2}   We find that the trial court did not err when it rejected Perry's outrageous government conduct defense. Where the defendant asserts that he was entrapped by outrageous government conduct, his defense is entrapment, which is determined by the trier of fact based upon the evidence presented at trial, not a due process "outrageous

government conduct" defense made at pretrial and determined by the judge. We overrule his first assignment of error. However, the trial court erred when it ordered the forfeiture of the vehicle without conducting a proportionality review. We sustain Perry's second assignment of error. We vacate the forfeiture order and remand the matter for a hearing pursuant to the forfeiture statute, R.C. 2981.09.

## I.  FACTS AND PROCEDURAL HISTORY

{¶3}   The Jackson County grand jury indicted Perry on three counts of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), one a first-degree felony, one a second-degree felony, and one a fourth-degree felony, and one count of trafficking in counterfeit controlled substances in violation of R.C. 2925.37(B), a fifth-degree felony. The indictment also included a forfeiture specification concerning a vehicle that Perry owned. Perry pleaded not guilty.

{¶4}   Perry filed a motion to dismiss the indictment on the grounds that outrageous conduct by law enforcement violated his due process rights. Perry contended that a confidential informant approached him on three different occasions about helping with sales of counterfeit methamphetamine. Perry agreed to assist the informant with each of the three sales and, on the third sale, Perry was arrested by the sheriff's office. Perry argued that the government and its agent, the informant, engineered a crime solely to convict Perry and that the details of the plan "were hashed out by law enforcement and the informant ahead of time." Perry also argued that the government used egregious coercion to induce him to commit the crime when "the informant plied Mr. Perry and his roommate with methamphetamine and fentanyl . . . prior to *each* exchange." (Emphasis in original). Perry argued that the government's conduct violated his due process rights

and asked that the trial court dismiss the case. The State argued that the defense of outrageous government conduct is not separate from the defense of entrapment, citing *State v. Beeler*, 1993WL63419, (4th Dist. Mar. 2, 1993). The trial court held that under *Beeler, supra,* the defense of outrageous government conduct is not a separate defense from entrapment and denied Perry's motion to dismiss.

{¶5}    At trial, Perry did not assert an affirmative defense of entrapment. To the contrary, in his opening statement, defense counsel stated, "Law enforcement will testify as to what they observed. And, again, as my client . . . as Mr. Perry's attorney, we're not so much criticizing law enforcement. In no way are we saying law enforcement was involved with what Scotty [the informant] was doing and his slick working of the system to kind of dupe my client but he was also duping and playing law enforcement." The trial court presented jury instructions for the parties' consideration and those instructions did not include instructions on the affirmative defense of entrapment. Perry's counsel reviewed the instructions, made no objections, and did not ask for an instruction on an entrapment defense.

{¶6}    The State presented evidence of the three controlled drug sales and the laboratory report identifying the illegal drug substances. The jury found Perry guilty on all counts, including the vehicle forfeiture specification. The trial court merged two of the trafficking counts and sentenced Perry on three aggravated trafficking counts (counts one, three, and four). The trial court imposed an 18-month term on count one, an 8-year term on count three, and an 11-year indefinite term on count four. The trial court imposed consecutive sentences for a total aggregate prison term of 20.5 years to 26 years. Perry's vehicle, a 2006 Chevy pick-up truck, was ordered forfeited to law enforcement.

## II.  ASSIGNMENTS OF ERROR

**{¶7}**   Perry presents the following assignments of error:

I.      A due process claim of outrageous government conduct and the defense of entrapment are separate defenses. *State v. Doran*, 5 Ohio St.3d 187 (1983); *State v. Beeler*, 1993 Ohio App. LEXIS 1365 (4th Dist. March 2, 1993); *United States v. Russell*, 411 U.S. 423 (1973); *Hampton v. United States*, 425 U.S. 484 (1975).

II.     The trial court erred when it ordered the forfeiture of Mr. Perry's vehicle without determining whether its order was proportionate to the offenses. R.C. 2981.04(B); R.C. 2981.09(A); Ohio Const., art I, § 9; U.S. Const., amend. VIII.

## III.  LAW AND ANALYSIS

### A.  Outrageous Government Conduct and Entrapment

**{¶8}**   Perry contends that the trial court erred when it found that the defense of outrageous government conduct is part of the entrapment defense and cannot be separately maintained. He contends that entrapment is an affirmative defense that must be proven by the defendant at trial following the State's case while outrageous government conduct is a due process violation that is raised prior to trial or in a Rule 29 motion at the close of the State's case. "We review alleged errors of law de novo." *State v. Williams*, 2023-Ohio-3647, ¶ 8.

**{¶9}**   Perry acknowledges that the Supreme Court of Ohio has not addressed the claim of outrageous government conduct. However, the Court recognized the affirmative defense of entrapment in *State v. Doran*, 5 Ohio St.3d 187 (1983). In *Doran*, Doran had been convicted of drug trafficking and had asked for a jury instruction on entrapment as an affirmative defense based on what he argued was inducement by an undercover agent

and informant. The trial court gave a jury instruction on entrapment that failed to allocate any burden of proof and that the Supreme Court of Ohio found was inherently misleading and confusing.

{¶10} The Supreme Court of Ohio discussed applying either an objective test, which focuses on the egregious nature of law enforcement conduct, or a subjective test, which focuses on the defendant's predisposition, to the entrapment defense:

> We must initially choose between defining entrapment under the "subjective" or "objective" test. Succinctly stated, the subjective test of entrapment focuses upon the predisposition of the accused to commit an offense whereas the objective or "hypothetical-person" test focuses upon the degree of inducement utilized by law enforcement officials and whether an ordinary law-abiding citizen would have been induced to commit an offense.

*Doran* at 190. The Court adopted the subjective test and explained that "[b]y focusing on the predisposition of the accused to commit an offense, the subjective test properly emphasizes the accused's criminal culpability and not the culpability of the police officer."

*Id.* at 192. The Court identified the elements of an entrapment defense:

> Consequently, where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute, the defense of entrapment is established and the accused is entitled to acquittal. However, entrapment is not established when government officials "merely afford opportunities or facilities for the commission of the offense" and it is shown that the accused was predisposed to commit the offense.

*Doran* at 192. In a footnote, the Court recognized the possibility that a separate due process defense may exist outside of the entrapment context:

> An accused may put the conduct of the police or their agent into issue by arguing that such conduct was so outrageous as to violate due process. *Rochin v. California* (1952), 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183. In our view, a 'due process' defense is analytically distinct from the defense of entrapment.

*Id*. at fn. 4. Thus, the Court recognized that, in non-entrapment situations like that described in *Rochin,* a defendant may have a due process defense.

**{¶11}** *Rochin v. California, supra*, cited in the *Doran* footnote, did not involve outrageous police entrapment conduct, but instead involved extreme measures by law enforcement to obtain evidence. In *Rochin,* three deputy sheriffs broke into Rochin's bedroom and watched as he took two pills from the nightstand and swallowed them. The three deputies jumped onto him and tried to force the capsules out of his mouth. When that failed, they handcuffed him, drove him to the hospital, and ordered a doctor to forcibly stomach pump Rochin against his will until he vomited the pills, which were later discovered to contain morphine. The California state court affirmed his conviction for morphine possession, despite finding that the officers " 'were guilty of unlawfully breaking into and entering defendant's room and were guilty of unlawfully assaulting and battering defendant while in the room', and 'were guilty of unlawfully assaulting, battering, torturing and falsely imprisoning the defendant at the alleged hospital.' " *Rochin*, 342 U.S. at 166-167, quoting *People v. Rochin*, 101 Cal.App.2d 140, 143 (1950).

**{¶12}** The United States Supreme Court found a due process violation in law enforcement's conduct to procure the pills as evidence:

> [W]e are compelled to conclude that the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation.

*Rochin*, 342 U.S. at 172.

**{¶13}** It is significant that the *Rochin* case cited as dicta in a footnote in *Doran* did not involve a claim of police entrapment – it was not a case where the focus was on outrageous government conduct as it related to entrapment. Rochin was not induced by law enforcement to purchase or consume the morphine; he possessed it prior to any law enforcement involvement. Critically important for our analysis is the fact that *Doran* explicitly rejected an approach which focuses on the "compelling and outrageous" police conduct in entrapment cases, which is the objective test approach to the entrapment defense that appellant in *Doran* had urged the Court to adopt:

> Appellant advocates adoption of the objective test. The approach advanced by appellant would examine the conduct of the police officer or agent and require a determination of whether the police conduct would induce an ordinary law-abiding citizen to commit a crime. Appellant's position is that *the conduct of the police or their agent in this case was compelling and outrageous* in continuing to induce appellant into committing a crime after appellant had repeatedly refused to succumb to these inducements. (Emphasis added.)

*Doran*, 5 Ohio St.3d at 191.

**{¶14}** In essence, Perry argues that we should disregard *Doran's* rejection of the objective test for entrapment and instead adopt it by focusing on what he contends was compelling and outrageous inducement conduct on the part of law enforcement. However, *Doran* expressly rejects this and holds that an entrapment defense is governed by a subjective test, not an objective test. This does not mean that evidence of police conduct is irrelevant. To prove entrapment, the defendant must show that "the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute, the defense of entrapment is established and the accused is entitled to acquittal." *Doran* at 192. Thus, the argument that the police acted outrageously to

induce the defendant to engage in the crime is generally part of the entrapment defense. *State v. Beeler*, 1993WL63419, *2 (4th Dist. Mar. 2, 1993), citing *State v. Jurek,* 5 Ohio App.3d 30 (8th Dist. 1989) and *State v. Latina*, 13 Ohio App.3d 182, 185 (8th Dist. 1984) ("The Ohio courts have not recognized a due process defense of outrageous government conduct separate from the entrapment defense."); *State v. Gantzler*, 1991WL128232, *2 (3d Dist. July 11, 1991) (where defendant attempted to raise "outrageous official misconduct" as a separate entrapment defense, court held, "it has been held that such a defense, separate from the entrapment defense is not recognized in Ohio").

**{¶15}** In *Beeler, Jurek*, *Latina*, and *Gantzler,* each of the defendants had asserted entrapment defenses but claimed that the inducing conduct by law enforcement was so outrageous as to constitute a separate due process defense. The Fourth, Eighth, and Third Districts rejected defendants' attempts to raise a due process outrageous conduct entrapment defense. The focus on law enforcement's conduct as the basis for an entrapment defense was rejected because it was rejected in *Doran*. The United States Supreme Court likewise does not carve out two types of entrapment defenses; it does not recognize one "due process" entrapment defense for outrageous inducement conduct and another entrapment defense for run-of-the-mill inducement conduct:

> The limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government activity in question violates some protected right of the Defendant. Here, as we have noted, the police, the Government informant, and the defendant acted in concert with one another. If the result of the governmental activity is to "implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission . . .," the defendant is protected by the defense of entrapment. If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law. But the police conduct here no more deprived defendant of any right secured to him by the United States

Constitution than did the police conduct in *Russell* deprive Russell of any rights.

(Citations omitted.) *Hampton v. United States*, 425 U.S. 484, 490–91 (1976); *see also United States v. Russell,* 411 U.S. 423, 431–32, (1973) ("While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, cf. *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the instant case is distinctly not of that breed."); *United States v. Kelly*, 707 F.2d 1460, 1475–76 (D.C.Cir.1983) ("We may not alter the contours of the entrapment defense under a due process cloak, and we lack authority, where no specific constitutional right of the defendant has been violated, to dismiss indictments as an exercise of supervisory power over the conduct of federal law enforcement  agents.").

**{¶16}** To argue that the Fourth District's decision in *Beeler* is out of synch with other Ohio districts, Perry relies upon cases in which the defendants attempted to assert a due process outrageous government conduct defense for conduct that fell *outside* of the context of an entrapment defense. In other words, Perry takes cases of alleged outrageous conduct by law enforcement *that did not involve entrapment* to incorrectly argue that these other districts recognize a separate due process entrapment defense. For example, in *State v. Corcoran,* 2023-Ohio-1218 (8th Dist.), the defendant argued that he had ineffective assistance of counsel because his attorney did not file a pretrial motion arguing that the state engaged in outrageous government conduct. The alleged outrageous conduct was not related to an entrapment defense but was based on Corcoran's argument that the Ohio Internet Crimes against Children Task Force failed to follow the United States Department of Justice guidelines requiring certain age

disclosures as it pertained to such investigations. The court found no evidence of outrageous conduct in the record and overruled Corcoran's ineffective assistance of counsel claim.

**{¶17}** In *State v. South,* 2017-Ohio-5636 (11th Dist.), the defendant argued that the trial court erred in overruling his pretrial motion to dismiss his case based on an outrageous government conduct defense. The government misconduct allegedly involved witness intimidation by certain detectives involved in the case – not outrageous conduct related to an entrapment defense. Citing both *Rochin, supra*, and *Doran, supra*, the court recognized that "an accused may put the conduct of the police . . . into issue by arguing that such conduct is so outrageous as to violate due process." *South* at ¶ 43. However, after finding no evidence that the detectives engaged in witness intimidation tactics, the court affirmed the trial court's decision. Again, *South* did not involve alleged outrageous government conduct related to entrapment. Therefore, *South* did not recognize a due process entrapment defense.

**{¶18}** In *State v. Gaines,* the defendants asserted that " 'the litany of prosecutorial abuses and ethical violations, the extraordinary due process violations, the objectionably abusive treatment of citizens exercising their right as citizens to petition their government for redress, the undisguised attack on citizens who challenge the abuse of governmental authority, [and] the intentional interference with First Amendment rights' as committed by the state in this case constitute outrageous government conduct, warranting the dismissal of the indictments against them." *State v. Gaines,* 2011-Ohio-1475, ¶ 42 (12th Dist.). Once again, the *Gaines* defendants were not asserting a due process "outrageous government conduct" entrapment defense. Rather, the alleged outrageous conduct was

based on prosecutorial misconduct and First Amendment violations. The court found that the government's behavior in investigating and communicating with the defendants did not constitute outrageous government behavior. *Id.* a ¶ 45; *see also State v. Jones*, 1988WL42628, *4 (5th Dist. Apr. 29, 1988) (rejecting a "due process" entrapment defense).

**{¶19}** Of the cases Perry has cited, only the Second District has recognized a due process "outrageous government conduct" defense in the context of alleged entrapment conduct. *State v. Cunningham*, 2004-Ohio-1935 (2d Dist.) (a decision in which the appellate court quoted the entire trial court decision verbatim in ¶ 6 through ¶ 59 and adopted it as its own). In *Cunningham,* the court acknowledged that "there is a division of authority in Ohio as to whether this defense can be asserted separately from entrapment." *Id*. at ¶ 18 (citing cases from the 8th District which held that the two defenses are not separable and cases from within its own district which held that they may constitute two separate entrapment-type defenses). *Cunningham* also acknowledged that its adoption of a due process outrageous government conduct defense for entrapment-type conduct was based on the footnote in *Doran* referencing *Rochin*, which did not involve entrapment conduct. Ultimately *Cunningham* rejected the defendant's claim of outrageous government conduct finding that the use of "decoy prostitutes as a means to snare 'johns' has never been considered so egregious by any court to support this due process defense." *Id*. at ¶ 29.

**{¶20}** Based on our review of the law, the Fourth District is not an outlier in the entrapment defense jurisprudence. We are bound by the holding in *Doran*, *infra*, rejecting the objective test which focuses on outrageous government conduct in entrapment

defenses cases. *State v. Doran*, 5 Ohio St.3d 187, 191 (1983). Where the defendant asserts that he was entrapped by outrageous government conduct, his defense is entrapment, which is determined by the trier of fact based upon the evidence presented at trial, not a due process "outrageous government conduct" defense made pretrial and determined by the judge. *State v. Doran,* 5 Ohio St.3d 187 (1983).

**{¶21}** We overrule Perry's first assignment of error.

## C. Forfeiture of Vehicle

**{¶22}** For his second assignment of error, Perry challenges the forfeiture order because the trial court failed to conduct a proportionality review.

**{¶23}** The forfeiture statutes, R.C. 2981.04(B) and R.C. 2981.09, require the trial court to conduct a proportionality review because property cannot be forfeited if its value is disproportionate to the severity of the offense. The proportionality review is a constitutional protection:

> [W]e hold that forfeiture of property . . . is a form of punishment for a specified offense and, therefore, is a "fine" for purposes of Section 9, Article I of the Ohio Constitution and the Eighth Amendment to the United States Constitution. Accordingly, prior to entering an order of forfeiture, the trial court must make an independent determination whether forfeiture of that property is an "excessive fine" prohibited by the Excessive Fine Clauses of the Ohio and United States Constitutions.

*State v. Hill,* 70 Ohio St.3d 25, 34 (1994).

**{¶24}** R.C. 2981.09 provides that the State has the burden to prove by clear and convincing evidence that the amount or value of the property subject to forfeiture is proportionate to the severity of the offense. R.C. 2981.09 also provides a non-exhaustive list of factors to be considered by the trial court when making the proportionality review. The record is void of any evidence that the trial court conducted a proportionality review.

At the sentencing hearing, the trial court's only statement was, "The forfeiture was handled by the jury."

**{¶25}** The State argues that Perry did not object at the sentencing hearing and therefore there is no miscarriage of justice. However, the two cases the State cites for authority both involved plea agreements in which the defendant voluntarily relinquished the vehicle as part of the agreement. *State v. Peterson*, 2024-Ohio-3276, ¶ 46 (4th Dist.); *State v. Gloeckner*, 1994WL111337 (4th Dist. Mar. 21, 1994). As we explained in *Peterson*:

> [T]his Court and others have recognized that "when [a] defendant enters a plea agreement calling for the forfeiture of seized property, adherence to the statutory procedures [is] unnecessary." "In other words, '[w]hen property is forfeited through a plea agreement, the forfeiture is "not effectuated by operation of the statutory provisions governing forfeiture of contraband, but rather by the parties' agreement." ' "

(Citations omitted.) *Peterson* at ¶ 46. Because this case does not involve a plea agreement in which Perry voluntarily relinquished his vehicle, the State's cases do not apply.

**{¶26}** We find that the trial court erred when it failed to conduct a proportionality review, which constitutes plain error. *State v. Luong,* 2012-Ohio-4519, ¶ 44 (12th Dist.) ("the trial court committed plain error in failing to conduct a proportionality review . . . as required by R.C. 2981.04 and R.C. 2981.09. Forfeitures are not favored in law and equity, and forfeiture statutes must be interpreted strictly against the state."). The proper remedy is to vacate the forfeiture order and remand the matter for a hearing pursuant to R.C. 2981.09. *State v. Howze*, 2024-Ohio-5447, ¶ 68 (7th Dist.). We sustain Perry's second assignment of error.

IV. CONCLUSION

**{¶27}** We overrule Perry's first assignment of error and affirm his convictions for aggravated drug trafficking. We sustain his second assignment of error and reverse and vacate the forfeiture order. We remand the cause for the limited purpose of resentencing on the forfeiture specification.

JUDGMENT AFFIRMED, IN PART,
VACATED, IN PART, AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED, IN PART, VACATED, IN PART, AND CAUSE REMANDED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**